Per Curiam.

In the present case we have for consideration the following sections of the Revised Code.
Section 4301.03, reading in part:
“The Board of Liquor Control may adopt and promulgate, repeal, rescind, and amend, in the manner required by this section, rules, regulations, standards, requirements, and orders necessary to carry out Chapters 4301 and 4303 of the Revised Code, including the following:
it # * *
“(H) Rules, regulations, and orders limiting the number of permits of any class within the state or within any political subdivision of the state; and for such purpose adopting reasonable classifications of persons or establishments to which any authorized class of permits may be issued within any such political subdivision.”
*98 Section 4303.29, reading in part:
“Not more than one D-3, D-4 or D-5 permit shall he issued for each 2,000 population, or part thereof, in any county or municipal corporation, except that in any city of a population of 55,000 or more, one D-3 permit may be issued for each 1,500 population, or part therof.”
Appellant owns and conducts a restaurant in the city of Fairview Park in Cuyahoga County, which on April 11, 1949, was a village, but which, according to the census of 1950, had become a city of 9,311 persons.
Appellant has invested some $900,000 in its restaurant, and apparently it is a place of fine character, as the Court of Appeals in its opinion said:
“The high standing of the applicant, and the enviable position it occupies in the restaurant business, places it in the category of the few choice places of business to which permits would be issued ordinarily without any difficulty.”
The sole reason for the refusal to issue the permits is regulation 64 adopted by virtue of the claimed express authority in Section 4301.03, Revised Code.
Section 1 of that regulation reads:
“The number of D-3, D-3a, D-4 and D-5 permits which may be issued within the state of Ohio and within each political subdivision thereof is hereby limited to a figure which shall be equal to the number of permits of each above designated class respectively issued and outstanding in the state of Ohio and in each political subdivision thereof as of April 11, 1949 # # #
“No new D-3, D-3a, D-4 and D-5 permits shall be issued except permits issued pursuant to the provisions of regulation 14, and, except, also, new permits issued upon the expiration of any existing permits to the same permit holder for the same location. ’ ’
In the present case, it is stipulated that there were three class D-3 permits and one class D-3a permit issued and outstanding in Fairview Park on April 11, 1949, and the same number at the time of appellant’s applications and their rejection by the board.
It is likewise stipulated that there are no applications for *99 class D-3 permits which, have priority over appellant’s applications.
The question presented to us is the reasonableness or legality of regulation 64.
Section 119.11, Revised Code, provides in part:
“* * * but no person affected thereby shall be precluded from attacking at any time the reasonableness or legality of any rule in its application to a particular set of facts or circumstances. ’ ’
Appellant in its brief presents three questions of law:
1. Whether the board has the power to adopt a regulation limiting the number of permits of any class without adopting reasonable classifications of persons or establishments to which any class of permits may be issued within any political subdivision.
2. Whether the board has the power to further limit certain classes of permits where the General Assembly has already imposed a limitation.
3. Whether regulation 64 is reasonable, uniform and nondiscriminatory as applied to the facts of the present case.
In reference to the first two questions, we are of the opinion that under the broad powers to promulgate regulations, given by Section 4301.03, Revised Code, the Board of Liquor Control may reasonably regulate the number of permits of any class within any political subdivision; and the fact that the General Assembly in Section 4303.29, Revised Code, has provided for a maximum number of D-3, D-4 or D-5 permits which may be issued in any county or municipal corporation does not prevent the board from reasonably limiting by rule such classes of permits.
It is obvious that the liquor business, although legal by Ohio law, has in it such dangers that it is entirely subject to the police power of the state and may, in fact, be prohibited. Under Ohio law, providing for local option, a large part territorially of the state prohibits traffic in intoxicating liquors. A license, or a right to such a license, to engage in the liquor business is not an inherent right of a citizen, a contract or a property right. State, ex rel. Zugravu, v. O’Brien, 130 Ohio St., 23, 196 N. E., 664. It is apparent, therefore, that, fine and *100 expensive as appellant’s restaurant may be, it has no inherent or property right to a liquor license since such license is a mere privilege conferred by the state.
We come now to the question of the reasonableness of regulation 64 in its application to the facts or circumstances of the present case.
According to the brief of the Board of Liquor Control, in early 1949 it determined that there was a necessity for the limitation of permits within the various political subdivisions of the state and adopted a regulation, which was the predecessor of regulation 64, limiting the number of permits to the number issued and outstanding on April 11, 1949, and thereby evinced the opinion that there were sufficient liquor permits of the various classes then outstanding in the state to adequately serve the needs of the people of the state, and that the issuance of additional permits would create severe enforcement problems.
This court in Board of Liquor Control v. Tsantles, 156 Ohio St., 512, 103 N. E. (2d), 749, considered regulation 64 as originally promulgated. In that case, this court reversed the judgment of the Court of Appeals, so far as it held invalid the provision of regulation 64 requiring the consent of the Department of Liquor Control for the renewal of a permit or the transfer of it from one place to another or from one person to another. But in the Tsantles case this court expressly withheld comment with reference to the first part of section 1 of regulation 64 limiting the number of permits to the figure in existence on April 11, 1949, for the reason that the question was not presented in that case.
As we have said, there can be no question as to the power of the Board of Liquor Control to reasonably limit the number of permits of any class within the state or within any political subdivision of the state, but it can not by rule establish prohibition. That function rests either with the General Assembly as representative of the people, with those to whom the General Assembly may have lawfully delegated that function or with the people themselves as the makers of their Constitution.
We do not question that section 1 of regulation 64 was entirely reasonable and fair when it was adopted in April 1949. *101 That question is not before us. But we can not blind our eyes or seal our ears to what substantially every one in the state sees, hears and knows, namely, that since the spring of 1949 there has not only been a great growth in the population of Ohio but likewise a tremendous shift of population. Great government enterprises, as well as the moving in and out of great industries, have utterly changed the characteristics of many communities in this state.
In one of our own cases, we had an example of a village which was practically nothing in population in 1949, and yet on February 23, 1955, bad a population of 38,118. State, ex rel. Brubaker, Mayor, v. Brown, Secy. of State, 163 Ohio St., 241, 126 N. E. (2d), 439.
In a state growing and shifting in population, like Ohio, it is obvious that any regulation freezing liquor permits by locality, however reasonable it might have been at the time, would in all probability constitute an unreasonable allocation seven years later. The result could inevitably be an overabundance of permits in some localities and practically prohibition in others, thus creating a grave injustice in both places.
Therefore, we hold, without in any way curtailing the power of the Board of Liquor Control to adopt rules, regulations and orders pursuant to Section 4301.03, Eevised Code, that the first paragraph of section 1 of regulation 64 is, as of now, unreasonable and, therefore, invalid.
The board argues, however, that, conceding the present unreasonableness of regulation 64, the question is presented as to whether appellant may avail itself of alleged conditions in other parts of the state with or by which it is not concerned or affected, and it is contended that, whereas under the state law not more than five D-3 and D-3a permits could be issued in Fairview Park, limiting the number to three D-3 and one D-3a permits is a reasonable limitation.
Since we hold the first paragraph of section 1 of regulation 64 to be unreasonable and, therefore, invalid, and since the sole ground for the rejection of appellant’s applications was the existence of the freeze created by regulation 64, the reasonableness of the regulation does affect the particular set of facts or circumstances in appellant’s situation.
*102 Accordingly, the judgment of the Court of Appeals is reversed, and the cause is remanded to the Board of Liquor control for its further consideration.

Judgment reversed and cause remanded.

Matthias, Zimmerman, Stewart, Bell and Taet, JJ., concur.
Weygandt, C. J., and Hart, J., dissent.